UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  13-22708-CIV-ALTONAGA/O'Sullivan

JUAN C. VILLAR,

       Plaintiff,

vs.

THE CITY OF AVENTURA, *et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendants, the City of Aventura (the "City"), Thomas Mundy ("Mundy"), Juan Gonzalez ("Gonzalez"), and Karyn Brinson's ("Brinson['s]") (collectively, "Defendants[']") Combined Motion for Summary Judgment ("Motion") [ECF No. 67], filed on April 29, 2014.  The Court has carefully considered the parties' written submissions and applicable law.

## I.  BACKGROUND[1]

On the afternoon of September 4, 2009, Plaintiff, Juan C. Villar ("Villar"), was in front of a Winn-Dixie supermarket in Aventura, Florida.  (*See* Defs.' SMF ¶¶ 2–3 (citation omitted)).  A Winn-Dixie manager, Levetieus Johnson ("Johnson"), informed another manager, David Ortiz

---

[1] By Order dated May 15, 2014 ("May 15 Order") [ECF No. 81], the Court noted Plaintiff's Response to Defendants' Motion . . . ("Response") [ECF No. 77] failed to comply with Local Rule 56.1(a), which requires a Statement of Material Facts ("SMF") in response to a motion for summary judgment.  Plaintiff was ordered to provide a SMF in response to Defendants' Combined Joint Statement of Material Facts . . . ("Defendants' SMF") [ECF No. 69].  The Court specifically reminded Plaintiff a failure to controvert the material facts of Defendants' SMF would result in deeming them admitted.  (*See* May 15 Order 1 (citing Local Rule 56.1(b))).  Plaintiff subsequently filed a SMF ("Plaintiff's SMF") [ECF No. 84], which he later advised was missing pages two through four as a result of a scanning error.  (*See* Replacement Sheets . . . ("Replacement Sheets") [ECF No. 92]).  The Court accepts the Replacement Sheets as if they had been included in Plaintiff's SMF and refers to the statements in both documents when referencing "Plaintiff's SMF."

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

("Ortiz"), about a disturbance outside the store.  (*See id.* ¶ 3 (citation omitted)).  Outside, Ortiz

saw two individuals involved in a "scuffle" who looked like they were about to fight.  (*Id.*

(citation omitted)).  Ortiz told the two to "knock if off" and called the police when they

continued.  (*Id.* (citation omitted)).  At some point, Johnson sat down next to Villar, who, he later

said, was so "seriously drunk" he fell on top of Johnson.  (*Id.* ¶ 4 (citations omitted)).  Villar

verbally harassed a woman exiting the Winn-Dixie store, tried to physically assault her, and then

pushed "a man dressed as if he were a [r]abbi to the ground" and punched him.  (*Id.* (alteration

added; citations omitted)).

Aventura Police Department officers Mundy and Gonzalez responded to the Winn-Dixie

supermarket, where they learned from people on scene, including a Winn-Dixie employee, Villar

had been disturbing and harassing customers and had battered one of them.  (*See id.* ¶ 5 (citations

omitted)).  Mundy and Gonzalez approached Villar to ask him some questions and for

identification, and Villar attempted to flee from them.  (*See id.* ¶ 6 (citations omitted)).  Johnson,

Gonzalez, and Mundy saw Villar strike Gonzalez.  (*See id.* ¶ 7 (citations omitted)).  Villar was

arrested for battery of a law enforcement officer in violation of Florida Statute section

784.07(2)(b) and the lesser-included offense of resisting arrest without violence in violation of

Florida Statute section 843.02.  (*See id.* ¶ 8).  Villar has described himself as either unconscious

or semi-conscious at the time of his arrest.  (*See id.* ¶ 2).

Charges were filed against Villar for both offenses, and he was convicted of violating

section 843.02 after trial.  (*See id.* ¶ 8 (citation omitted)).  He was sentenced to 30 days in jail

and probation.  (*See id.* (citation omitted)).

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

Villar filed a complaint about the incident with the Internal Affairs department of the Aventura Police Department. (*See id.* ¶ 9). Brinson conducted the investigation. (*See* Complaint ¶¶ 10–11 [ECF No. 4]). The City's official custom and policy is to take all citizen complaints seriously and perform an unbiased investigation. (*See* Defs.' SMF ¶ 10). Brinson concluded Villar's allegations against the officers were unfounded because his allegations conflicted with the officers' version as well as that of "all known witnesses." (*Id.*).

Villar disputes this version of the events. (*See generally* Pl.'s SMF). He denies being "severely" intoxicated the day of his arrest, stating he was "under the influence of a normal intoxication combined with a rise in blood sugar, known as hyperglycemia." (*Id.* ¶ 2). His unconscious or semi-conscious appearance that day was the result of suffering an injury to his head and as a result of his undiagnosed diabetes. (*See id.*). Thus, he disputes the characterization that he was self-intoxicated. (*See id.* ¶ 7).

Villar claims Ortiz did not witness a commotion and scuffle between Villar and another individual on scene, and surveillance video shows Ortiz could not have witnessed such activity. (*See id.* ¶ 3). According to Villar, Johnson is a perjurer. (*See id.* ¶ 4). So, too, are Mundy and Gonzalez; Villar says they did not interview any witnesses at the scene of the incident. (*See id.* ¶ 5 (citation omitted)). Villar admits fleeing from the officers, but says this did not occur when Mundy asked for his identification, but later, after Gonzalez arrived and while the officers discussed "what charge(s) they would bring against" Villar. (*Id.* ¶ 6 (citation omitted)).

Villar does not dispute Defendants' assertion Mundy saw him strike Gonzalez, only claiming "the jury said otherwise" and Johnson's claim of having seen this is "absurd." (*Id.* ¶ 7 (citation omitted)). Villar claims the verdict form in his criminal trial contained "three charges,"

3

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

not the two charges Defendants state he was prosecuted for.  (*Id.* ¶ 8 (citation omitted)).  Villar says the internal affairs investigation file was turned over to prosecutors and used in his prosecution; additionally, Brinson spoliated evidence needed for his defense in accordance with policy and custom by suppressing a video of events from the day of the incident.  (*See id.* ¶¶ 9–10 (citations omitted)).

Count I of Villar's Complaint is asserted against all Defendants for violating 42 U.S.C. section 1983 based on false arrest, malicious prosecution, and assault; conspiracy to commit all three; and the City's failure to properly train and oversee its officers.  (*See* Compl. ¶¶ 14–23).  In Count II, Villar maintains a claim for common-law malicious prosecution against all Defendants. (*See id.* ¶¶ 24–28).  In Count III, he alleges Mundy, Gonzalez, and Brinson (collectively, the "Officer-Defendants") and the City have adopted a policy to falsely arrest and imprison individuals using falsified evidence, although he does not state the legal theory under which Count III is brought.  (*See id.* ¶¶ 29–30).[2]  Defendants now move for summary judgment on all of Villar's remaining claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P 56(a).  A party asserting a fact cannot be genuinely disputed must cite to the record, "including depositions, documents, electronically stored information, affidavits or declarations,

---

[2] By Order entered on October 15, 2013 ("October 15 Order") [ECF No. 36], the Court granted the City's Motion for Judgment on the Pleadings [ECF No. 33] as to Counts II and III of the Complaint, and as to Plaintiff's prayer for punitive damages, pre-judgment interest and attorney's fees.  (*See* October 15 Order).  The Court subsequently declined to set aside the October 15 Order after permitting Villar to file an opposition to the Motion for Judgment on the Pleadings.  (*See* [ECF No. 46]).  As such, the City remains a Defendant as to Count I alone.

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

stipulations . . ., admissions, interrogatory answers, or other materials," or show "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1) (alteration added). The Court need only consider cited materials from the record. *See* FED. R. CIV. P. 56(c)(3). In making its assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." FED. R. CIV. P. 56(e) (alterations added). Indeed, the "non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant." *Riebsame v. Prince*, 267 F. Supp. 2d 1225, 1231 (M.D. Fla. 2003) (citations omitted).

"An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (citation and internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

or quantity to allow a rational finder of fact to find" for the nonmoving party. *Anderson*, 477 U.S. at 254 (alteration added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Motion addresses the qualified-immunity defense of the Officer-Defendants, and as noted, the parties dispute whether the Officer-Defendants falsely arrested Villar, assaulted him, maliciously prosecuted him, and conspired to undertake these actions. But "[t]o deny summary judgment any time a material issue of fact remains . . . could undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005) (some alterations added; footnote call number, citations, and internal quotation marks omitted). Thus,

> [w]hen conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury. . . . When a district court considers the record in this light, it eliminates all issues of fact. By approaching the record in this way, the court has the plaintiff's best case before it. With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute.

*Id.* (alterations added; internal citation omitted).

## III. ANALYSIS

Because a determination of Villar's state common-law claims affects his remaining claims, the Court first addresses Defendants' summary judgment arguments as to Count II.

6

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

**A.  State Law Malicious Prosecution Claim — Count II**

Villar brings a common-law malicious prosecution claim against the Officer-Defendants in Count II, claiming they "initiated or caused the initiation and/or continuation of battery charges against" him.  (Compl. ¶ 25).[3]  The elements of a claim for malicious prosecution in Florida are as follows:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) (citations omitted), *disapproved of on other grounds by Weingrad v. Miles*, 29 So. 3d 406 (Fla. 3d DCA 2010).

While Villar is not explicit about the criminal prosecution underlying this claim, he references the "battery charges" brought against him (Compl. ¶ 25), and the only criminal charge for which he could pursue a claim is the violation of section 784.07(2)(b), for which he was not convicted (*see* Defs.' SMF ¶ 8 (citing Villar Dep. 11)).  Section 784.07(2) forbids "knowingly committing an assault or battery upon a law enforcement officer . . .  engaged in the lawful performance of his or her duties," and section 784.07(2)(b) classifies the battery as a felony of the third degree.  FLA. STAT. § 784.07(2) (alteration added).

Defendants argue the existence of probable cause for the prosecution of the section 784.07(2)(b) offense requires summary judgment in their favor.  (*See* Mot. 4).  Defendants' SMF

---

[3] Villar also alleges the City permitted or established a policy allowing malicious prosecutions (*see* Compl. ¶ 26), but as stated, judgment on the pleadings has already been entered in favor of the City on Count II (*see* October 15 Order).

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

notes Mundy saw Villar strike Gonzalez (*see* Defs.' SMF ¶ 7 (citing Gonzalez Aff. ¶ 8)), a fact

Villar fails to dispute in his own SMF (*see* Pl.'s SMF ¶ 7).   Obviously, the fact an officer

witnessed an individual strike another officer creates probable cause to prosecute that individual

for "knowingly committing an assault or battery upon a law enforcement officer" under section

784.07(2).   *See Alterra Healthcare Corp. v. Campbell*, 78 So. 3d 595, 602 (Fla. 2d DCA 2011)

(defining lack of probable cause in malicious prosecution context as "without a reasonable

ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a

cautious man in the belief that the person accused is guilty of the offense with which he is

charged." (citation and internal quotation marks omitted)).   Defendants cite to record evidence

establishing reasonable grounds of suspicion Villar battered a police officer; Villar fails to

adduce any probative evidence on this point.   Because Villar fails to point to a genuine dispute of

material fact about the nonexistence of probable cause — required to pursue his claim for

malicious prosecution — summary judgment is granted in favor of Defendants on Count II.

**B.  Section 1983 Claims — Count I**

Villar brings section 1983 claims against Defendants based on his alleged false arrest,

malicious prosecution, and assault, as well as conspiracy to commit these violations.   (*See*

Compl. ¶¶ 15–17).   Defendants seek summary judgment on this Count.

*1.  Malicious Prosecution Claim — All Defendants*

"To establish a federal malicious prosecution claim under [section] 1983, a plaintiff must

prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of

her Fourth Amendment right to be free from unreasonable seizures."   *Kingsland v. City of*

*Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citation omitted; alteration added) (applying

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

Florida law).  As stated in Part III.A, *supra*, Villar fails to prove the elements of the Florida tort

of malicious prosecution, and therefore his section 1983 claim for malicious prosecution fails.[4]

  *2.  False Arrest and Assault Claims — Mundy and Gonzalez*

  The Officer-Defendants argue they are entitled to qualified immunity from the section

1983 claims in Count I concerning Villar's false arrest and assault.  (*See* Mot. 13–15).

"Qualified immunity offers complete protection for government officials sued in their individual

capacities if their conduct 'does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.'"  *Kingsland*, 382 F.3d at 1231 (citations and

internal quotation marks omitted).  To be entitled to the qualified-immunity defense, a

government official must demonstrate the acts complained of were committed within the scope

of the officer's "discretionary authority."  *Id*. at 1232.  Once the officer has done so, "the burden

shifts to the plaintiff to show that qualified immunity is not appropriate."  *Lee v. Ferraro*, 284

F.3d 1188, 1194 (11th Cir. 2002); *see also McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir.

2007); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("[O]nce an officer or official has

raised the defense of qualified immunity, the burden of persuasion as to that issue is on the

plaintiff." (alteration added; citations omitted)).  This is embodied in the Eleventh Circuit's two-

part *Zeigler/Rich* analysis:

  1.  The defendant public official must first prove that "he was acting within the
  scope of his discretionary authority when the allegedly wrongful acts occurred."

---

[4] The malicious prosecution claim may also fail because conviction of a lesser-included offense precludes
a section 1983 action for malicious prosecution of the greater offense.  *See St. Germain v. Isenhower*, 98
F. Supp. 2d 1366, 1372 (S.D. Fla. 2000).  However, the parties appear to dispute whether Villar's offense
of conviction was a lesser-included offense, and thus the Court does not address this argument.

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

2.  Once the defendant public official satisfies his burden of moving forward with
the evidence, the burden shifts to the plaintiff to show lack of good faith on the
defendant's part.  This burden is met by proof demonstrating that the defendant
public official's actions "violated clearly established constitutional law."

*Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d

1558, 1563–64 (11th Cir. 1988)); *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983) (per

curiam).[5]

In order to prevent dismissal of his claims under the doctrine of qualified immunity, a

plaintiff must show the facts, taken in the light most favorable to the plaintiff, demonstrate the

defendant violated a constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sharp v.

Fisher*, 532 F.3d 1180, 1183 (11th Cir. 2008) (per curiam); *McClish*, 483 F.3d at 1237.  Even if

the facts demonstrate a violation, the plaintiff still has the burden to show the constitutional

rights were "clearly established" at the time of the violation in order to survive summary

judgment.  *See Saucier*, 533 U.S. at 201; *Sharp*, 532 F.3d at 1183; *McClish*, 483 F.3d at 1237.

Decisions of the United States Supreme Court, the Eleventh Circuit, and the Supreme Court of

Florida can clearly establish law in this jurisdiction.  *See McClish*, 483 F.3d at 1237.  For the law

to be "clearly established," it must be so clear that every objectively reasonable official

understands it to prohibit the challenged act.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th

Cir. 2002) (footnote call number omitted).  The purpose of this requirement is to "ensure that

before they are subjected to suit, officers are on notice their conduct is unlawful."  *Saucier*, 533

U.S. at 206.

That the very act (or something materially similar to it) in question has previously
been held unlawful by a court is not always necessary.  But in the light of

---

[5]  District court judges have the discretion to decide which of the two prongs of the qualified immunity
analysis should be addressed first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

> preexisting law, the unlawfulness must be apparent: plain, clear, obvious.  Unless
> the government official's act is so obviously wrong, in the light of preexisting
> law, that only a plainly incompetent official or one who was knowingly violating
> the law would have committed the act, the official is entitled to qualified
> immunity.

*Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) (citation omitted);

*Montoute*, 114 F.3d at 184 ("[T]he qualified immunity standard is broad enough to cover some

mistaken judgment, and it shields from liability all but the plainly incompetent or those who

knowingly violate the law." (alteration added; citation and internal quotation marks omitted)).

As for the false arrest and assault claims, it is undisputed that Mundy and Gonzalez were

government officials performing discretionary functions at the time they arrested Villar.

Although Villar does not challenge any part of Defendants' qualified immunity argument in his

Response (*see generally* Resp.), the Court analyzes whether Villar can demonstrate the officers

violated a clearly established statutory or constitutional right to overcome the qualified-immunity

defense for the false arrest and assault claims.

In order to prove a false arrest, Villar must show officers lacked probable cause to arrest

him, as

> an individual has a right to be free from unreasonable searches and seizures.  In
> Fourth Amendment terminology, an arrest is a seizure of the person, . . . and the
> reasonableness of an arrest is, in turn, determined by the presence or absence of
> probable cause for the arrest.  Probable cause to arrest exists when law
> enforcement officials have facts and circumstances within their knowledge
> sufficient to warrant a reasonable belief that the suspect had committed or was
> committing a crime.

11

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

*Skop v. City of Atlanta, GA.*, 485 F.3d 1130, 1137 (11th Cir. 2007) (internal citations and quotation marks omitted).[6]   Villar, while not explicitly arguing Mundy and Gonzalez lacked probable cause for his arrest, appears to argue the jury did not necessarily find the officers had probable cause to arrest him.   (*See* Resp. 2–3).   Villar does dispute the veracity of some of the Officer-Defendants' statements, such as the existence of a rabbi he assaulted or that the officers received credible information a crime had been committed.   (*See id.* 3)

The facts taken in the light most favorable to Villar fail to support a finding there was no probable cause to arrest him.   According to Defendants' Statement of Material Facts, upon arriving at the scene, Mundy and Gonzalez "learned from one or more individuals, including an employee of the Winn Dixie[,] that . . . Villar [] had been disturbing and harassing customers, and that he assaulted and battered one of them."   (Defs.' SMF ¶ 5 (alterations added; citations omitted)).   In response, Villar blithely states, "Pure perjury.   Neither MUNDY nor GONZALEZ interviewed any witnesses (Exhibit 07)."   (Pl.'s SMF ¶ 5).   Villar's support for this fact is wholly inadequate — Exhibit 7 is an unsworn and even unsigned motion to disqualify counsel Villar made in the present litigation — and, moreover, the exhibit *expressly contradicts* Villar's statement.   Villar's motion, analyzing video surveillance of the incident, states, "MUNDY has cracked open the driver side door and made contact with ORTIZ. . . . [T]*he conversation between MUNDY and ORTIZ comes to an abrupt end . . . .*"   (Pl.'s SMF Ex. 7 7 (alterations and emphasis added)).   The record does not support Villar's statement Mundy did not interview any witnesses,

---

[6] "A person is seized when, by means of physical force or a show of authority, his freedom of movement is restrained such that, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."   *United States v. House*, 684 F.3d 1173, 1199 (11th Cir. 2012) (alterations, citation and internal quotation marks omitted).   For purposes of the false arrest claim, the Court assumes without deciding Villar was arrested by the time Mundy and Gonzalez asked Villar for identification.   (*See* Defs.' SMF ¶ 6).

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

and the statement "Pure perjury," without citation to any record support, fails to create a genuine issue about the veracity of Defendants' SMF. *See Anderson*, 477 U.S. at 254.

The facts viewed in the light most favorable to Villar thus indicate probable cause existed to arrest Villar, because Mundy spoke to Ortiz, a witness to Villar's actions. Based on the totality of circumstances, Villar's arrest was objectively reasonable, and therefore probable cause to arrest him existed under federal law. *See Skop*, 485 F.3d at 1137; *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) ("This [probable cause] standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)) (alteration added; other citation omitted)).

Moreover, arguable probable cause is "all that is required for qualified immunity to be applicable to an arresting officer." *Lee*, 284 F.3d at 1195 (citation and internal quotation marks omitted). "In determining whether arguable probable cause exists, we apply an objective standard, asking whether the officer's actions are objectively reasonable regardless of the officer's underlying intent or motivation." *Id.* (citations, internal quotation marks, and alterations omitted). Having received information from a witness on scene about Villar's harassment and assault of passersby, the officers had at least arguable probable cause to arrest Villar based on the totality of the circumstances. *See id.* ("Although probable cause requires more than suspicion, it does not require convincing proof." (citations and internal quotation marks omitted)).

13

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

Villar has not demonstrated Mundy or Gonzalez violated a clearly established statutory or constitutional right, and therefore he fails to overcome the qualified-immunity defense. *See Courson*, 939 F.2d at 1487 (citations omitted). Accordingly, Mundy and Gonzalez are entitled to the qualified-immunity defense, and summary judgment is granted in their favor as to the false arrest claim.

Villar does not mention Mundy and Gonzalez's assault of him in his Response. (*See generally* Resp.). And his SMF fails to properly assert necessary facts; its only mention of a potential assault is Villar's statement his unconscious or semi-conscious state was a result of "the effects of being thrown down upon Plaintiff's head and suffering a concussion." (Pl.'s SMF ¶ 2 (citing *id.* Ex. 2, ¶ 3)). Villar does not state who threw him down or whether it was accidental; moreover, the record citation Villar provides is irrelevant to his claim of assault, as it references a motion for rehearing in his criminal case about counsel's failure to introduce surveillance tapes showing him to "have been unconscious or semi-conscious at the time of the alleged 'resistance.'" (*Id.* Ex. 2 ¶ 3). A statement of material facts must be "supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." S.D. FLA. L.R. 56.1. As Villar fails to cite to any record evidence showing he was assaulted by Mundy and Gonzalez, he has failed in his burden to show the Defendants' actions "violated clearly established constitutional law." *Courson*, 939 F.2d at 1487 (citations and internal quotation marks omitted). Mundy and Gonzalez receive the qualified-immunity defense on the assault claim, and summary judgment is granted in their favor.

14

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

### 3. *Conspiracy Claims — Mundy and Gonzalez*

Villar brings conspiracy claims against Mundy and Gonzalez for his assault, false arrest, and false prosecution.  (*See* Compl. ¶¶ 15–17).  To prove a section 1983 claim for conspiracy to violate constitutional rights, a plaintiff "must show that the parties reached an understanding to deny the plaintiff his or her rights.  The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy."  *Grider v. City of Auburn, Ala*., 618 F.3d 1240, 1260 (11th Cir. 2010) (citation and internal quotation marks omitted).

Defendants assert the conspiracy claims are precluded by the intracorporate conspiracy doctrine.  (*See* Mot. 16–17).  "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy."  *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).  The doctrine applies to public, governmental entities.  *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001); *see also Grider*, 618 F.3d at 1261 (collecting cases).  The doctrine is only applicable if the employees acted "in the scope of their employment."  *McAndrew*, 206 F.3d at 1036.   A police officer acts within his scope of employment when "the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business."  *Grider*, 618 F.3d at 1261 (footnote call number omitted).  The inquiry is similar to that used in qualified immunity cases, where courts "examine whether a public official's acts fall within his 'scope of authority' and thus his 'discretionary functions,' not whether he was authorized to commit an illegal act."  *Id.* at

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

1262 n.33 (citations omitted).  Indeed, "an officer who uses excessive force during the course of an arrest is acting while in the scope of his or her employment as a law enforcement officer." *Hung Phan v. City of St. Petersburg, Fla.*, Case No. 8:06-cv-01818-T-17-TGW, 2007 WL 1225380, at *6 (M.D. Fla. Apr. 25, 2007) (citation omitted).

Here, Mundy and Gonzalez's duties and scope of authority included arresting and apprehending Villar.  Accordingly, Mundy and Gonzalez acted within the scope of their employment, negating the necessary multiplicity of actors required for conspiracy claims.  *See McAndrew*, 206 F.3d at 1036.[7]  Summary judgment is granted in their favor on Villar's conspiracy claims.

### 4. *Manufacturing False Statements Claim — Brinson*

Villar claims Officer Brinson manufactured false statements, falsely accused Villar of assaulting a rabbi, and devised a cover story to justify Mundy and Gonzalez's actions.  (*See* Compl. ¶ 21).  Defendants argue Brinson should receive qualified immunity, as she was acting within her discretionary authority in completing an investigation; Villar does not dispute she was acting within the scope of her authority.  (*See* Mot. 13 (citation omitted); *see generally* Resp.). Defendants argue Villar cannot show Brinson violated any clearly established law, especially because Villar admits Brinson did not fabricate a witness.  (*See* Mot. 15).  In response, Villar asserts 1) Brinson must know a witness at the scene, Johnson, is a "perjurer," and she should have noted this in her report, because she saw the security camera video of the incident; 2)

---

[7] Courts recognize several exceptions to the intracorporate conspiracy doctrine.  *See Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 769–70 (11th Cir. 2000) (noting exceptions to the doctrine exist, for example, in cases of criminal charges of conspiracy, or when corporate agents have an "independent personal stake in the corporate action" (citations and internal quotation marks omitted)).  Villar points to no relevant exceptions, nor does the Court discern any from the parties' briefing.

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

Brinson was trying to exculpate Mundy and Gonzalez by including in her report the "Fantasy tale of Levetieus Johnson"; and 3) Brinson's improperly conducted investigation was presented to the jury and, if properly done, would have caused prosecutors to drop the case. (Resp. 4–5).

Even assuming Brinson's alleged wrongs constitute a violation of clearly established law, Villar fails to establish his factual claims through record citations. For instance, he asserts Brinson "spoliated evidence critical to the defense" in part by "suppress[ing] the video of events prior to the officer's arrival . . . ." (Pl.'s SMF ¶ 9 (alterations added) (citing *id.* Ex. 10)). Yet Exhibit 10, Brinson's affidavit, clearly states she "viewed all surveillance footage that Winn Dixie produced in response to my request for all video. The video provided to me did not capture any misconduct on the part of the officers . . . ." (*Id.* Ex. 10 ¶ 6 (alteration added)). This does not support Villar's assertion Brinson spoliated evidence or suppressed any videos.

Villar's SMF cites to his criminal trial transcript showing the internal investigation's results were discussed in Villar's criminal trial, but a reasonable jury could not infer from this evidence Brinson manufactured false statements or spoliated evidence. (*See id.* Ex. 11). As for Brinson's knowledge Johnson is a perjurer, the only record citation Villar provides — one page from Brinson's deposition — merely illustrates Brinson saw a video that did not display "the incident itself occurring," referring to Villar's harassment of individuals. (Resp. 4 (citing *id.* Ex. D)). This barebones record citation fails to support Villar's assertion Brinson spoliated evidence or knew Johnson was lying. Villar has failed to support his assertions with citations from the record such that, taken in the light most favorable to him, they would demonstrate Brinson violated a constitutional right. *See Saucier*, 533 U.S. at 201. Brinson therefore receives qualified immunity, and summary judgment is entered in her favor.

17

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

### 5. *Failure to Train and to Provide Proper Internal Affairs Unit — City*

Villar alleges the City has a policy of failing to train and oversee its police force, permitting false arrest, and permitting the internal affairs unit to cover up police misconduct. (*See* Compl. ¶ 22).   The City maintains it is entitled to summary judgment on Villar's section 1983 claim in Count I because Villar has not shown the City was deliberately indifferent to his constitutional rights in the content or amount of training received by the officers.   (*See* Mot. 20).

A municipality may be held liable for its own, independent violations of federal law pursuant to section 1983.   *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).   "Local governing bodies . . . can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."   *Id.* at 690 (alterations added; footnote call number omitted).   A municipality may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."   *Id.* at 690–91.   To demonstrate a *Monell* claim, the plaintiff must show: (1) the violation of a constitutional right occurred; (2) the existence of a municipal policy or custom; and (3) a causal connection between the violation and the municipal policy or custom.   *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

The circumstances giving rise to section 1983 liability under a theory of failure to train are quite limited, requiring a showing of "deliberate indifference to the rights of persons with whom the police come into contact."   *Id.* at 388 (footnote call number omitted).   Deficient training of one officer is not sufficient to meet this standard; rather, the alleged deficiency must

18

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

be shown to be widespread and the identified deficiency in training must be closely related to the ultimate injury. *See id.* at 390–91. A showing of "deliberate indifference" requires a conscious choice by policymakers among various options. *See Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1171–72 (11th Cir. 1995). To prove a municipality made a conscious choice, a plaintiff must demonstrate either "the need for a particular type of training [is] obvious where [officials] face clear constitutional duties in recurrent situations" or "the need for more or better training [is] obvious where a pattern of constitutional violations exists such that the municipality knows or should know that corrective measures are needed." *Id.* at 1172 (alterations added; citations omitted).

Villar argues based on Brinson's affidavit "it is policy and custom of the City of Aventura to not investigate matters outside of an 'assignment.'" (Resp. 5 (footnote call number omitted)). At the end of his Response, he asserts Brinson's affidavit "admits of a *Monell* situation," without any support. (*Id.* 6). The only potentially relevant factual assertions in his Statement of Material Facts are paragraphs nine and ten, which, as stated in Part III.B.4, *supra*, lack support in the record. Villar has wholly failed to provide any proof of City officials facing "clear constitutional duties in recurrent situations" or "a pattern of constitutional violations," as required to prove his claim. *See Young*, 59 F.3d at 1172 (citations omitted). Because there is no genuine dispute of material fact on Villar's claims against the City, summary judgment is granted in favor of the City on Count I.

### C. Count III

Villar styles paragraphs twenty-nine through thirty of the Complaint as a "Third Cause of Action," but he does not specify the legal theory under which his factual allegations entitle him

Case No. 13-22708-CIV-ALTONAGA/O'Sullivan

to relief.  (*See* Compl. ¶¶ 29–30).  Villar alleges Defendants have adopted policies of arresting, assaulting, falsely imprisoning persons, and falsifying evidence.  (*See id.*).  These allegations have already been addressed in Part III.B, *supra*.  Given Villar's failure to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), summary judgment is granted in favor of Defendants on Count III.

## IV.  CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 67]** is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of July, 2014.

_____

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record